# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT RUIZ, JR., | Case No. 1:18-cv-00872-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 12, 13, 14) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.

## INTRODUCTION

Robert Ruiz, Jr., ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from degenerative disc disease, hypertension, hip osteoarthritis, and degenerative joint disease of the right shoulder. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 8, 9.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on July 9, 2014, and a Title XVI application for supplemental security income on November 18, 2015. (AR 88, 188.) Plaintiff's applications were initially denied on December 17, 2014, and denied upon reconsideration on April 3, 2015. (AR 100-103, 105-109.) Plaintiff requested and received a hearing before Administrative Law Judge Scot Septer ("the ALJ"). Plaintiff appeared for a hearing on January 12, 2017. (AR 32-78.) On February 9, 2017, the ALJ found that Plaintiff was not disabled. (AR 15-26.) The Appeals Council denied Plaintiff's request for review on April 30, 2018. (AR 1-4.)

### A.    Hearing Testimony

Plaintiff testified at the January 12, 2017 hearing with the assistance of counsel. (AR 38-68.) Plaintiff is 5' 10" tall and weighs around 218 pounds. (AR 42.) He is right handed. (AR 42.) Plaintiff attended school through the twelfth grade. (AR 48.) Plaintiff is married but is not with his wife. (AR 41.) Plaintiff receives general relief. (AR 55.)

Plaintiff lived with his sister and her 19 year old daughter in Visalia, California. (AR 40, 41, 56.) They both worked opposite shifts so one of them was always home. (AR 56.) He has been staying with her for the past year to a year and a half. (AR 40.) When he lived with her she did her own cooking. (AR 49.) Plaintiff did what he could but his sister did most things. (AR 49.) Plaintiff did some cleaning and took out the trash once or twice a week. (AR 50, 54.) He cleaned for himself and had problems with bending over. (AR 50.) He would start hurting if he bent over so he has to watch what he is doing. (AR 50.) When he bends his pain will be between 7 and 8 all the time. (AR 51.) During the day, Plaintiff would spend one to two hours in the house. (AR 57.)

Plaintiff's sister moved so he is staying with a friend right now. (AR 41.) His friend is disabled and does not work. (AR 56.) His friend does the cooking. (AR 50.) Sometimes he will help cook, but his friend likes to cook. (AR 50.) He has moved back and forth between his friend's home and his brother's home for the past six months. (AR 49.) Plaintiff does his own

1   laundry, a little at a time.  (AR 54.)

2        Plaintiff gets up in the morning, eats breakfast and takes his medicine.  (AR 55.)  He

3   stretches and takes a little walk.  (AR 55.)  He lives near the park so he walks there and back.

4   (AR 55-56.)  It is about the same distance that Plaintiff walked to get to the hearing.  (AR 56.)

5        Plaintiff has to get up and walk when he is sitting down.  (AR 51.)  But he cannot walk

6   too much because he gets tired.  (AR 51.)  When he gets tired he starts walking differently.  (AR

7   67.)  He walked from the parking garage where he parked his car and he began hurting just a

8   little bit.  (AR 51.)  It hurts more when Plaintiff walks up or down the stairs and he holds onto

9   the railing and moves slowly.  (AR 52.)  Plaintiff drove from Visalia to attend the hearing but

10   stopped in Dinuba for a little bit.  (AR 52.)  He does not drive much anymore.  (AR 52.)  When

11   he does drive, he has to stop and stretch all the time.  (AR 52.)  He goes to Bakersfield to see the

12   pain doctor and his mother.  (AR 53.)  When he goes to see the pain doctor, he will drive or a

13   friend will drive him.  (AR 53.)

14        Plaintiff last worked for the City of Visalia part time for about three to four months in

15   2014.  (AR 42, 43.)  He was a tagger, getting off a truck and getting trash cans so the truck could

16   pick them up.  (AR 43.)  Plaintiff worked full time in shipping from 2005 to 2012.  (AR 43.)  He

17   was packaging metal.  (AR 43.)  He would open the metal and place it in boxes, seal and label

18   the boxes, and roll them to the conveyor belt.  (AR 43.)  He would lift the metal out of the carts.

19   (AR 44.)  He would lift 100 pounds by himself and sometimes over 150 pounds with someone

20   else.  (AR 44.)  Plaintiff started working for the company through an employment agency and

21   then they hired him.  (AR 44-45.)  While working for the employment company in 2005, he also

22   drove a forklift, delivering paper and boxes for bindery workers.  (AR 46.)  He primarily moved

23   pallets, but he would pack and fill the pallets.  (AR 46.)  Prior to that Plaintiff had some

24   temporary jobs.  (AR 46-47.)

25        Plaintiff has been identified as having a piece of metal in his body, but he has not had to

26   see the doctor about it anymore.  (AR 39.)  Plaintiff has problems sitting, lifting his legs, hip and

27   spine problems, pain radiating down his leg, arthritis in his back and right elbow, and high blood

28   pressure.  (AR 39.)  When he has pain, he takes his medication, relaxes, and sits down.  (AR 57.)

1  He has a pain patch that he puts on once a week.  (AR 57.)  The pain patch helps a little bit, he
2  also takes Norco which helps a little bit too.  (AR 57.)

3  Plaintiff would be able to lift a gallon of milk but he would feel something.  (AR 58-59.)
4  Plaintiff does all his lifting with his right hand.  (AR 59.)  If he were to walk to the garage it
5  would not feel good at all, and his pain would be about a seven.  (AR 59.)  He feels it in his
6  lower back and has to get up and stretch.  (AR 59.)  Plaintiff has a back brace that he got six to
7  eight months prior to the hearing from the pain doctor but he was not wearing it at the hearing.
8  (AR 60.)  He wears the brace if he tries to do something.  (AR 60.)

9  Plaintiff takes his medication as prescribed.  (AR 61.)  He does not have any side effects
10  and they help him with his pain.  (AR 61.)  His pain will go away for two to four hours when he
11  takes his medication.  (AR 61.)  Plaintiff clarified that his pain is not gone it is just less.  (AR
12  66.)  It will be a three or four after he takes his medication.  (AR 66.)  When he starts doing
13  something the pain might come back again depending on what he is doing.  (AR 62.)  He takes a
14  muscle relaxer that makes him go to sleep and then he will start hurting when he sleeps a certain
15  way.  (AR 62.)

16  Plaintiff can sit for 20 to 30 minutes and then he will need to get up.  (AR 62.)  He cannot
17  sit in a really hard chair.  (AR 63.)  Plaintiff cannot even walk five minutes.  (AR 67.)  He can
18  stand 20 to 30 minutes.  (AR 68.)  Sometimes Plaintiff will lie down during the day.  (AR 68.)
19  There have been a lot of times where he has to lay down during the daytime.  (AR 68.)  He does
20  not regularly need to lie down.  (AR 68.)  He has more pain when it is cold.  (AR 68.)

21  Plaintiff has two bulging discs in his spinal cord.  (AR 64.)  He has had two injections.
22  (AR 63.)  The first one helped him for two to three months.  (AR 63.)  The second one hurt him
23  and he told the doctor he did not want anymore.  (AR 63.)  The second injection did give him
24  any relief.  (AR 64.)  He saw a surgeon who said he will eventually need surgery.  (AR 64.)  He
25  had his last MRI in March or April.  (AR 65.)

26  Plaintiff is unable to work because he cannot sit down that long and when he gets up he
27  cannot walk that far.  (AR 65.)  He has to push himself up with his arms to get out of a chair.
28  (AR 65.)

1    Mary E. Jesko, a vocational expert ("VE"), also testified at the hearing.  (AR 69-76.)

2    **B.    ALJ Findings**

3    The ALJ made the following findings of fact and conclusions of law.

4    • Plaintiff met the insured status requirements of the Social Security Act through December

5    31, 2017.

6    • Plaintiff has not engaged in substantial gainful activity since the alleged onset date of

7    July 2, 2014.

8    • Plaintiff has the following severe impairments: degenerative disc disease, hypertension,

9    hip osteoarthritis, and degenerative joint disease of the right shoulder.

10   • Plaintiff does not have an impairment or combination of impairments that meets or

11   medically equals the severity of one of the listed impairments.

12   • Plaintiff has the residual functional capacity to perform light work as defined in 20

13   C.F.R. § 404.1567(b) and 416.967(b) except he can occasionally climb ramps, stairs,

14   ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and

15   occasionally reach overhead with the dominant arm.

16   • Plaintiff is unable to perform any past relevant work.

17   • Plaintiff was born on December 2, 1963, and was 50 years old which is defined as an

18   individual closely approaching advanced age on the alleged disability onset date.

19   • Plaintiff has at least a high school education and is able to communicate in English.

20   • Transferability of job skills is not material to the determination of disability because

21   using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is

22   not disabled whether or not he has transferable job skills.

23   • Considering Plaintiff's age, education, work experience, and residual functional capacity

24   there are jobs that exist in significant numbers in the national economy that he can

25   perform.

26   • Plaintiff has not been under a disability as defined in the Social Security Act from July 2,

27   2014, through the date of this decision.

28   (AR 20-26.)

5

**III.**

**LEGAL STANDARD**

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the

---

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. § 404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The regulations are generally the same for both types of benefits. Therefore, further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

6

1  Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

2  disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v.

3  Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a

4  scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)

5  (internal quotations and citations omitted). "Substantial evidence is relevant evidence which,

6  considering the record as a whole, a reasonable person might accept as adequate to support a

7  conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of

8  Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

9      "[A] reviewing court must consider the entire record as a whole and may not affirm

10  simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting

11  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not

12  this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

13  for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

14  susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

15  upheld.").

### IV.

### DISCUSSION AND ANALYSIS

18      Plaintiff contends that the ALJ erred by failing to provide specific reasons to reject his

19  pain testimony. Plaintiff argues that the reasons provided by the ALJ do rise to the clear and

20  convincing standard.

21      Defendant counters that the ALJ found that the objective medical evidence did not

22  support the degree of limitation that Plaintiff asserted and that Plaintiff responded well to

23  medication. Defendant argues that these findings have substantial support in the medical record

24  and are legally sufficient reasons to reject Plaintiff's symptom testimony.

25      Plaintiff replies that the ALJ cannot simply reject Plaintiff's symptom testimony by citing

26  the medical evidence that does not support the degree of impairment. Plaintiff argues that his

27  doctors prescribed medication and the fact that they found he did not exhibit pain at his medical

28  appointments does not show that they believed overt pain behavior was required for credible pain

complaints. Plaintiff contends that the ALJ cannot substitute his judgment for that of Plaintiff's doctors.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Then "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter v. Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015). "The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, 504 F.3d at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately

explained failure to seek treatment or to follow a prescribed course of treatment. . ..”

Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284).

The district court is constrained to review those reasons that the ALJ provided in finding the

claimant's testimony not credible. Brown-Hunter, 806 F.3d at 492.

The ALJ considered Plaintiff's testimony.

> The claimant testified that he has problems sitting and lifting his leg, and he experiences hip and leg pain, and problems with his spine. He said he also has arthritis in his back and right elbow. . . He said he cannot lift heavy items. He cannot do much without experiencing pain, and when he starts to have pain he takes his medication, relaxes, and sits down. He currently uses a patch for pain relief and he was taking Norco that helped his pain. The claimant said that cold weather makes him hurt more. He said he could lift a gallon of milk with his right hand. The claimant testified that he has a back brace that helps a little bit. He uses it during the day but he takes it off if he lifts anything. He was not wearing it at the hearing. The claimant said his medication relieves his pain for two to four hours but if he starts doing something his pain might come back depending on his activity. He said the longest he can sit is 20-30 minutes and then he has to get up. He said he cannot sit in a hard chair. He does not want any more spinal injections because the second one hurt him and did not give him any pain relief. The claimant said his pain is a seven or eight out of 10 all the time. He can walk for less than five minutes and he can stand for 20-30 minutes.

(AR 22.)

The ALJ found that Plaintiff's medically determinable impairments could reasonably be

expected to cause the alleged symptoms, but Plaintiff's testimony about the intensity, persistence

and limiting effects of his symptoms were not entirely consistent with the medical evidence and

the other evidence in the record. (AR 22-23.) The ALJ pointed out that Plaintiff alleges that he

is in constant pain, but the medical record indicates that he did not exhibit pain behavior during

his medical examinations. (AR 23.) The ALJ also noted that, in January 2015, Plaintiff's pain

was under good control with Norco and a muscle relaxer. (AR 23.) Although, the physician

offered him a work excuse for one week, Plaintiff declined stating he wanted disability for

several months. (AR 23.) Further, the ALJ noted that in March 2015, Plaintiff claimed he was

doing well and was stable; and similarly, in May 2015, he was doing well and taking his Norco

as needed. (AR 23.) After Plaintiff was prescribed a Butrans patch he was tolerating the

medication well and was only using the Norco for severe pain. (AR 23.)

/ / /

## A. Effectiveness of Medication

Plaintiff argues that the ALJ is substituting his judgment for that of the medical doctor's because they believed Plaintiff's complaints of pain. However, the ALJ's finding does not imply that Plaintiff's doctors inappropriately were prescribing pain medication for Plaintiff. The ALJ found that Plaintiff's medically determinable impairments could reasonably be found to cause him pain. However, the ALJ found that Plaintiff's complaints of constant pain were not consistent with his reports to his medical providers that he was doing well on his medication and that his pain was under good control with his medication. In evaluating symptom testimony, the ALJ may properly consider "[t]he type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms." SSR 16-3p (citing 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3)). Evidence that medical treatment successfully relieved the claimant's symptoms can undermine a claim of disability. Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017).

Plaintiff argues that he reported pain at this medical visits, but the ALJ considered Plaintiff's inconsistent statements in the medical record that he was stable and his pain was well controlled on his medication. Plaintiff began treatment with Dr. Nasr in August 2014 and received his first injection on October 6, 2014. (AR 372, 383.) On November 4, 2014, he reported that he had received a steroid injection and was feeling better. (AR 412.) On December 2, 2014, Plaintiff reported that he was not having bone or muscle pain, although he did complain of shoulder pain. (AR 407.) On January 2, 2015, Plaintiff reported that his back pain was under good control with Norco most of the time. (AR 400.) On January 5, 2015, Plaintiff reported that his shoulder pain was relieved by the nonsteroidal anti-inflammatory drugs and opioid analgesics. (AR 397.) On January 29, 2015, and March 2, 2015, Plaintiff reported he was stable and doing well. (AR 434, 474.)

On March 31, 2015, and April 29, 2015, Plaintiff reported experiencing increased pain. (AR 473, 472.) On May 27, 2015, Plaintiff reported that he had been doing well since his last visit and was using Norco without any side effects. (AR 470.) On June 25, 2015, Plaintiff reported that his pain had been stable since the last visit, although his elbow was still bothering

him. (AR 469.) On July 22, 2015, Plaintiff complained of increased pain with numbness and tingling . (AR 468.) He received a steroid injection on August 20, 2015. (AR 466.) On September 17, 2015, Plaintiff reported more than 80 percent relief since the injection and that his pain was much improved. (AR 465.) Plaintiff did continue to report pain in October and November. (AR 463, 464.) On December 10, 2015, Plaintiff reported that Norco helps him to function throughout the day. (AR 462.)

In 2016, Plaintiff complained of pain in his lower back, but that he had stopped taking his Neurontin. (AR 460, 461.) On March 1, 2016, Plaintiff complained of pain that is worse first thing in the morning, but that Norco helps to relieve his pain. (AR 459.) On March 30, 2016, Plaintiff reported that he had been doing well since his last visit and was taking Norco as needed. (AR 458.) On April 27, 2016, Plaintiff reported that his pain is the same and that he had tingling in his left hand on one day but none since. (AR 457.) Over the next few months, Plaintiff complained of lower back pain without radiculopathy and reported that physical therapy was making his pain worse so he stopped attending but that Norco was helping. (AR 455, 456, 498.)

On July 20, 2016, Plaintiff reported that his pain was stable and that his pain was interrupted. (AR 454.) On October 14, 2016, Plaintiff reported that he was tolerating the Norco but that it was not lasting long enough. (AR 493.) On October 31, 2016, Plaintiff reported that the patch was not helping enough. (AR 492.) On November 29, 2016, Plaintiff reported that the Butrans patch was not helping, but that Zanaflex helps. (AR 491.) On December 27, 2016, Plaintiff reported that he was tolerating the Butrans patch well and only taking the Norco for severe pain with no side effects. (AR 490.)

Plaintiff argues that while at times he reported no pain, there are other times when he reported pain of 7 or more out of 10. Plaintiff references visits with Dr. Nasr on August 20, 2015, and July 20, 2016. (AR 454, 466-467.)

On August 20, 2015, Plaintiff reported pain of 9 prior to receiving a lumbar transforaminal epidural steroid injection. (AR 466.) On July 20, 2016, Plaintiff reported pain of 7 and that his pain was interrupted. (AR 454.) He had been attending physical therapy. (AR 454.) Although Plaintiff reported pain of 7, the record notes that he displayed no pain behavior

1   throughout the examination.  (AR 454.)

2          However, as the ALJ specifically noted in his opinion, regardless of the level that

3   Plaintiff reported his pain, after the first injection, Dr. Nasr consistently found that Plaintiff did

4   not display any pain behavior throughout the examination.  (AR 454, 455, 456, 457, 458, 459,

5   460, 461, 462, 463, 464, 465, 468, 469, 470, 472, 473, 474, 490, 491, 492, 493, 494, 495.)

6   While Plaintiff argues that there is evidence to support his complaints of constant pain, "[w]here

7   evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that

8   must be upheld."  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).   The ALJ could

9   reasonably find that Plaintiff's statements regarding the effectiveness of his medication and Dr.

10  Nasr's findings that Plaintiff did not exhibit pain behavior on examination belied his testimony

11  about the severity of his pain.

12          While the record demonstrates that Plaintiff did continue to have some pain with

13  treatment, substantial evidence supports the ALJ's findings 1) that Plaintiff's complaints of

14  constant pain conflict with his statements to his medical providers; and 2) that his pain responded

15  well to treatment.

16          **B.     Medical Evidence**

17          The determination that a claimant's complaints are inconsistent with clinical evaluations

18  can satisfy the requirement of stating a clear and convincing reason for discrediting the

19  claimant's testimony.  Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297

20  9th Cir. 1999).   The ALJ properly considered this evidence in weighing Plaintiff's credibility.

21  "While subjective pain testimony cannot be rejected on the sole ground that it is not fully

22  corroborated by objective medical evidence, the medical evidence is still a relevant factor in

23  determining the severity of the claimant's pain and its disabling effects."  Rollins v. Massanari,

24  261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

25          The ALJ found that Plaintiff's examination findings in late 2015 through 2016 indicated

26  normal motor strength, no pain behavior, intact sensation, and reflexes and some tenderness in

27  the back and epicondyle.  As evidenced in the records discussed above, generally on those visits

28  Dr. Nasr noted that Plaintiff's muscle strength was 5/5 bilateral and symmetrical in the lower

extremities.  He had intact light touch and pinprick to the lower extremity bilaterally and "DTRs" were bilateral and symmetrical.  Plaintiff was found to have right lateral epicondyle with point tenderness.  (AR 454, 455, 456, 457, 458, 459, 460, 461, 462, 463, 464, 465, 468, 469, 470, 472, 473, 474, 490, 491, 492, 493, 494, 495.)

During this time period, Plaintiff was also examined on April 28, 2016, and was found to have some tenderness in the L4-L5 region on the left side with decreased range of motion.  (AR 443.)  On June 15, 2016, Plaintiff reported that his leg pain had resolved and had a normal neurologic examination with normal motor and sensory findings (AR 498.)  On December 29, 2016, he was examined and, while it was noted that he ambulated with difficulty, the examination findings were unchanged from the June 2016 visit.  (AR 499.)

Substantial evidence supports the ALJ's findings that the objective medical findings are inconsistent with Plaintiff's complaints of constant disabling back pain.

The ALJ has provided clear and convincing reasons to discredit Plaintiff's symptom testimony that are supported by substantial evidence in the record.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in finding that Plaintiff's symptom testimony was not credible.  Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Robert Ruiz, Jr.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: __**June 27, 2019**__

UNITED STATES MAGISTRATE JUDGE

13